IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATRICIA ISABEL MARTINEZ, | § | |
| *Plaintiff,* | § | SA-22-CV-00912-ESC |
| vs. | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| *Defendant.* | § | |

**ORDER**

This order concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II and for social security income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). On April 11, 2023, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. After considering Plaintiff's Opening Brief [#13], Defendant's Brief in Support of the Commissioner's Decision [#15], Plaintiff's Reply Brief [#17], the transcript ("Tr.") of the SSA proceedings [#10], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that substantial evidence supports the Commissioner's decision finding Plaintiff not disabled. The Court will therefore affirm the opinion of the Commissioner.

**I. Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28

U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#11].

## II.  Legal Standards

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the administrative law judge's ("ALJ's") decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.  *Garcia v. Berryhill*, 880 F.3d 700,

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Factual Background

Plaintiff Patricia Isabel Martinez filed her applications for DIB and SSI on April 13, 2020, alleging disability beginning February 5, 2020.  (Tr. 301, 341.)  At the time of her applications, Plaintiff was almost 50 years old and had a high school education with work experience as an aid doing kitchen prep at an assisted living facility, a fast food worker, a cashier at a bakery, and a housekeeper at a hospital, and she had worked on the assembly line at a recycling plant. (Tr. 50–54, 301, 341.)  The medical conditions upon which Plaintiff based her applications are diabetes, osteoarthritis of the wrist, liver disease, kidney disease, depression, bipolar disorder, peripheral neuropathy, headaches, high blood pressure, and carpal tunnel syndrome. (Tr. 340.)  Plaintiff had carpal tunnel surgery on February 21, 2020, several months prior to applying for disability benefits. (Tr. 48.)

An Adult Function Report completed by Plaintiff in conjunction with her applications emphasizes Plaintiff's difficulties with lifting, standing, and opening things due to her issues with her knees, elbows, and hands. (Tr. 347–52.)  Plaintiff's report also describes hand pain due to her carpal tunnel syndrome. (Tr. 347–52.)  Plaintiff stated in the report, however, that she is able to wash clothes and dishes, prepare meals, and go out to doctors' appointments and grocery stores. (Tr. 347–52.)  As to her social interactions, Plaintiff stated that she gets along with everyone easily until she disagrees with something. (Tr. 353.)  Plaintiff also responded "no" to a

question in the report about whether she had ever been fired or laid off because of problems getting along with other people. (Tr. 353.) Plaintiff's applications were denied initially on January 6, 2021. (Tr. 78–117).

Plaintiff completed a second Adult Function Report on February 18, 2021. (Tr. 396–403.) In this report, Plaintiff provided more specific information regarding her hand pain post-carpal tunnel surgery. Plaintiff explained that she has knots on her palms from the surgery; she has ganglion cysts on the back of her hands, which limit movement; and she experiences pain when she lifts more than 10 pounds. (Tr. 396.) She also referenced bone spurs and osteoarthritis on both knees, which limit her to standing for no more than an hour at a time, and neuropathy on her feet involving daily burning and numbness. (Tr. 396.) Plaintiff described more limited abilities to perform her daily activities than in the initial Adult Function Report, explaining that she requires assistance for washing hair and bathing due to hand cramps and is unable to even lift dishes. (Tr. 397–98.) Plaintiff also stated that her daughter drives her to doctors' appointments and that she otherwise does not go out of the house. (Tr. 398–99.)

As to mental limitations, Plaintiff stated that she has a bipolar disorder diagnosis, suffers from depression and anxiety, and becomes nervous working in crowds and loud environments. (Tr. 396.) Regarding social interactions, Plaintiff provided different information than in her previous Adult Function Report, stating that she has a history of problems with customers at prior jobs, struggles getting along with others, including family members, and does not socialize. (Tr. 400–01.) The second report also states that Plaintiff was fired in 1991 for yelling at her boss. (Tr. 401.)

Plaintiff's applications were denied again upon reconsideration on March 12, 2021. (Tr. 120–61.) Following the denial of her claim, Plaintiff requested an administrative hearing.

Plaintiff, her attorney, and a vocational expert attended the administrative hearing before ALJ Penny Wilkov on November 17, 2021. (Tr. 43–77.) Plaintiff and the vocational expert both testified at the hearing. (*Id.*)

At the hearing, Plaintiff testified that even post carpal tunnel surgery, she still doesn't have use of her hands due to strength issues, tingling, and numbness on both sides that goes up her forearms and is worsened at night and with use. (Tr. 55–56.) She testified she cannot open jars or bottles and cannot carry groceries, that it is difficult for her even to lift wet clothes out of the washer to put in the dryer, and that she absolutely cannot lift a gallon of milk. (Tr. 56–58.) Plaintiff described daily neuropathy pain in her feet that feels "like walking on rocks." (Tr. 59–60.) Due to this pain, Plaintiff is only able to walk for only about 20 minutes before needing to stop and rest and can only sit for about 45 minutes at a time. (Tr. 60, 63.)

As to mental health symptoms, Plaintiff testified to her depression and anxiety. (Tr. 64–66.) She explained that she remains socially isolated besides her interactions with her daughter and that she struggles in public with getting upset easily at others. (Tr. 66–67.) Plaintiff described her past social challenges at work as involving constant arguing with others because she always wants to be right. (Tr. 67–68.)

The ALJ issued an unfavorable decision on December 6, 2021. (Tr. 17–34.) The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 5, 2020, the alleged disability onset date. (Tr. 19.) At step two, the ALJ found Plaintiff to have the following severe impairments: obesity, depression, anxiety, bipolar disorder, bilateral carpal tunnel syndrome,

diabetes with neuropathy, and bilateral knee arthritis. (Tr. 20.) The ALJ found Plaintiff's migraines, hypertension, glaucoma, and liver and kidney issues to be non-severe. (Tr. 20.)

At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (Tr. 21–23.) The ALJ considered Plaintiff's osteoarthritis under Listing 1.18 (abnormality of major joints in any extremity), her peripheral neuropathy and carpal tunnel syndrome under Listing 11.14 (peripheral neuropathy), her diabetes under Listing 9.00 (endocrine disorders), and her mental health limitations under Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders), applying the psychiatric review technique known as the Paragraph B criteria.

Before reaching step four of the analysis, the ALJ found Plaintiff retains the residual functional capacity ("RFC") to perform light work, such that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently and can stand, walk, and sit for six hours in an eight-hour workday. (Tr. 24–32.) However, the ALJ imposed additional physical and mental limitations. The ALJ found Plaintiff can only occasionally climb ropes, ladders, or scaffolds; can only occasionally climb ramps and stairs; but can frequently stoop, kneel, crouch and crawl and frequently handle, finger, and feel bilaterally. (Tr. 24–32.) As to mental limitations, Plaintiff is limited to understanding, carrying out, and remembering detailed but not complex instructions; can only sustain concentration and persistence for periods of two hours at a time; and can work at a consistent pace throughout the work day, but not at a production rate pace where each task must be completed within a strict time deadline. (Tr. 24–32.) However, the ALJ specified that Plaintiff can tolerate routine changes to the work setting and can have frequent interactions with coworkers, supervisors, and the public. (Tr. 24–32.)

Based on this RFC, at step four the ALJ determined that Plaintiff is capable of performing her past relevant work as a cashier. (Tr. 32–34.) Additionally, the ALJ determined there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including mail clerk, general office clerk, or counter clerk. (Tr. 32–34.) Accordingly, the ALJ determined that Plaintiff is not disabled for purposes of the Act, and therefore not entitled to receive DIB or SSI. (Tr. 34.) Plaintiff requested review of the ALJ's decision, and after reviewing additional evidence submitted by Plaintiff, the Appeals Council denied review on June 23, 2022. (Tr. 1–5.) On August 19, 2022, Plaintiff filed the instant case, seeking review of the administrative determination.

## IV. Analysis

Plaintiff raises two points of error in this appeal: (1) the ALJ's assessment of the mental health evidence, especially as to social function, is unsupported by substantial evidence; and (2) the ALJ's assessment of the physical health opinion evidence, especially as to manipulative activities, is unsupported by substantial evidence. Neither of these arguments has merit or compels remand in this case.

Both of Plaintiff's points of error challenge the ALJ's RFC determination and consideration of the mental and physical health opinion evidence under the governing regulations. An RFC determination is the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* § 404.1545(a)(1)–(3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not

required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).  Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Under governing regulations, the ALJ is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding.[2]  *See* 20 C.F.R. § 404.1520c(a).  Instead, the ALJ must consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency.  *Id.* § 404.1520c(b)(2).  The other factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim.  *Id.* § 404.1520c(c).  The ALJ must articulate how persuasive she finds each of the opinions in the record and explain her conclusions with regard to the supportability and consistency factors.  *Id.* § 404.1520c(b)(2).  The ALJ may, but is not required to, articulate the consideration of the other factors, unless the ALJ finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  *Id.* § 404.1520c(b)(3).  In these situations, the ALJ must articulate consideration of the other factors as well.

**Physical RFC.**  The only argument advanced by Plaintiff as to the ALJ's assessment of the physical health opinion evidence is that the ALJ failed to offer any meaningful discussion in applying the supportability and consistency factors under Section 404.1520c(b)(2).  Plaintiff

---

[2] The regulations are stated in terms of the Commissioner.  But again, here the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  See, *supra,* note 1.

contends the ALJ should have included manipulative limitations in the physical RFC to account for Plaintiff's symptoms from her carpal tunnel syndrome. Because substantial evidence supports Plaintiff's physical RFC, remand is not required.

Again, the ALJ found that Plaintiff could perform a range of light work, including being able to frequently handle, finger, and feel. (Tr. 23–32.) March 2020 treatment notes show Plaintiff had recovered from her carpal tunnel surgery, had full range of motion in her hands, had "pretty much" regained her strength, and was experiencing less pain. (Tr. 712, 716.) Other physical examination notes in the record reflect that as of March 2020 Plaintiff's knee pain had improved, and she had full range of motion; that she had normal strength and tone in her muscles; that she had no swelling in her extremities; and that she appeared stable as to her bilateral carpal tunnel syndrome. (Tr. 708, 717, 718.) Finally, Plaintiff told the consultative examiner, Dr. Paul McCollum, Ph.D., that she has no difficulties with routine housework, laundry, and meal preparation and is able to shop for groceries and other items without limitation. (Tr. 24–25, 533.)

Plaintiff does not argue that the ALJ failed to consider the required supportability and consistency factors, only that the ALJ's ultimate conclusions as to Plaintiff's RFC were not supported by substantial evidence. The evidence regarding Plaintiff's condition after her carpal tunnel surgery provides substantial evidence to support the ALJ's decision not to include manipulative limitations in the physical RFC. Plaintiff's counsel even conceded at oral argument that there is evidence to support the physical RFC. Plaintiff's counsel simply argued to the Court that he believes the ALJ misconstrued the evidence and should have fashioned a more restrictive RFC. This Court is not permitted to reweigh the evidence or substitute its judgment for that of

9

the Commissioner (who adopted the ALJ's findings) and finds no reversible error with respect to the ALJ's physical RFC. *Newton*, 209 F.3d at 452.

**Mental RFC.** Plaintiff's mental RFC is also supported by substantial evidence. Plaintiff primarily argues that the ALJ should have assessed Plaintiff with more restrictions as to social functioning because the evidence shows that she has been unable to maintain consistent employment due to social issues related to her bipolar disorder. The ALJ concluded that Plaintiff could have frequent interaction with coworkers, supervisors, and the public, finding she has only mild limitations in her ability to interact with others. (Tr. 22, 24.) In doing so, the ALJ referenced numerous examination records in which Plaintiff presented as cooperative (Tr. 22, 554, 936, 968, 1015) and noted that she had an open, friendly expression, good eye contact, and a positive attitude toward Dr. McCollum during her consultative examination (Tr. 533). The ALJ also found it significant that Plaintiff responded "no" to a question in her initial Adult Function Report as to whether she had never been fired or laid off from a job because of getting along with other people. (Tr. 22.) The ALJ was entitled to rely on this evidence in assessing the extent of Plaintiff's mental limitations as to social interactions and the credibility of Plaintiff's self-described symptoms.

The ALJ also addressed the persuasiveness of Dr. McCollum's psychological consultative examination, particularly his finding that Plaintiff needs support from others in order to interact socially with supervisors, coworkers, and the public. (Tr. 32, 535.) The ALJ concluded the opinion was not consistent with or supported by Dr. McCollum's own examination or the examinations in the record documenting Plaintiff as alert, cooperative, with normal mood, affect, and memory. (Tr. 32.) The ALJ therefore considered the supportability

10

and consistency factors as dictated by Section 404.1520c(b)(3), and there is substantial evidence supporting the ALJ's conclusions.

The ALJ also considered the opinions of the State Agency Psychological Consultants ("SAPCs") at the initial and reconsideration levels in which they found Plaintiff capable of interacting adequately with coworkers and supervisors without any limitation. (Tr. 32, 94, 114.) The ALJ found these opinions only partially persuasive because these providers did not have the opportunity to examine Plaintiff in person and their conclusions were inconsistent with the evidence that Plaintiff had some difficulties with social interactions. (Tr. 32.) Thus, the ALJ limited Plaintiff to frequent interactions with the public, as opposed to imposing no social limitations whatsoever. Here, too, the ALJ applied the supportability and consistency factors and did not commit any procedural error.

Plaintiff argues that the ALJ should have ordered further development of the record for additional evidence on the extent to which Plaintiff's bipolar disorder, which by its nature is characterized by fluctuation in symptoms, bears on her ability to hold a given job for a significant period of time.

The ALJ in some instances "has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Where the existing medical evidence is inadequate to make an informed disability determination, the ALJ's duty to develop the record may be discharged by obtaining medical source statements from medical providers or referring the claimant for a consultative examination. *See Jessee v. Barnhart*, 419 F. Supp. 2d 919, 933–34 (S.D. Tex. 2006). However, the absence of a medical source statement or opinion on the claimant's ability to work "does not, in itself, make the record incomplete." *Ripley*, 67 F.3d at 557. The "salient issue" is always "whether substantial evidence

exists in the record to support the ALJ's decision." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). Further development of the record is not required "unless the record establishes such an examination is *necessary* to enable the [ALJ] to make the disability decision." *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original)).

Plaintiff has not established that the ALJ committed reversible error by not ordering additional medical evidence to further develop the record on Plaintiff's bipolar disorder and its effect on her ability to interact socially. The ALJ resolved conflicting evidence in the record on the extent of Plaintiff's social limitations by weighing the evidence and taking into consideration Plaintiff's own contradictory statements in the record. The ALJ was entitled to do so, weighing and evaluating the record in reaching the RFC. Because substantial evidence supports the ALJ's RFC, Plaintiff is not entitled to remand.

## V. Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 15th day of August, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE